IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WAYNE P., | ) | |
| | ) | No. 19 C 8137 |
| Plaintiff, | ) | |
| | ) | Magistrate Judge M. David Weisman |
| v. | ) | |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Wayne P. appeals the Commissioner's decision denying in part his application for Social Security benefits. For the reasons set forth below, the Court affirms the Commissioner's decision.

**Background**

On January 12, 2011, plaintiff filed an application for benefits alleging a disability onset date of May 1, 2006. (R. 255.) His application was denied initially and on reconsideration. (R. 137, 155.) After a hearing, an ALJ issued a partially favorable decision finding that plaintiff was disabled from May 1, 2006 through December 10, 2008 but not from December 11, 2008 through December 31, 2011, plaintiff's date last insured ("DLI"). (R. 12-25.) The Appeals Council denied review (R. 1-3), and plaintiff appealed to this Court, which remanded the case to the Commissioner for further proceedings. (R. 1053-77.)

On October 21, 2016, after holding another hearing, the ALJ issued a decision finding that plaintiff was not disabled from December 11, 2008 through his DLI. (R. 1121-31.) When plaintiff appealed, the Appeals Council assumed jurisdiction and remanded the case to another ALJ. (R. 1139-43.) On July 26, 2018, after a hearing, the ALJ issued a decision finding that plaintiff was

disabled from May 1, 2006 through December 10, 2008 but not from December 11, 2008 through his DLI. (R. 809-29.) The Appeals Council declined review (R. 793-97), leaving the ALJ's decision as the final decision of the Commissioner reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Although this standard is generous, it is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002) (citation omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520(a). The Commissioner must consider whether: (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The

2

claimant bears the burden of proof at steps one through four. 20 C.F.R. § 404.1560(c)(2); *Zurawski*, 245 F.3d at 886. If that burden is met, at step five, the burden shifts to the Commissioner to establish that the claimant is capable of performing work existing in significant numbers in the national economy. 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since May 1, 2006. (R. 814.) At step two, the ALJ determined that from May 1, 2006 through December 10, 2008, plaintiff had the severe impairments of "degenerative disc disease of cervical and lumbar spine, chronic pain syndrome, obesity, and status-post right rotator cuff repair." (*Id.*) At step three, the ALJ found that, during that period, plaintiff's disc disease medically equaled the criteria of Listing 1.04A, and thus he was disabled during that period, but he did not have an impairment or combination of impairments that met or medically equaled a Listing from December 11, 2008 through plaintiff's DLI. (R. 814-16.) At step four, the ALJ found that, from December 11, 2008 though the DLI, plaintiff was unable to perform past relevant work but had the RFC to perform sedentary work with certain exceptions. (R. 816-17, 827.) At step five, the ALJ found that since December 11, 2008, jobs existed in significant numbers in the national economy that plaintiff could have performed, and thus he was not disabled on that date or thereafter. (R. 828-29.)

Plaintiff contends that the ALJ's step three determination that he did not have a listing-level impairment after December 11, 2008 was erroneous because the ALJ relied on the wrong regulation in making that determination. (*See* R. 812-13 (citing 20 C.F.R. § 404.1594).) By its terms, the regulation cited by the ALJ applies to cases in which benefits have been awarded and the Commissioner reviews the claimant's continued entitlement to benefits. *See* 20 C.F.R. § 404.1594(a) ("There is a statutory requirement that, if you are entitled to disability benefits, your

continued entitlement to such benefits must be reviewed periodically."). In this case, however, the ALJ was not tasked with determining whether plaintiff still qualified for benefits he had previously been awarded. Rather, she was tasked with determining plaintiff's initial eligibility for benefits between December 11, 2008 and his DLI. (R. 809-10.)

Though the ALJ's reliance on that regulation was error, it is harmless error if the ALJ's "factual determinations would compel a denial of benefits under the [appropriate] regulations." *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003). The appropriate regulation requires the ALJ to determine whether plaintiff had an impairment or combination of impairments that met or equaled a listed impairment in the period December 11, 2008 through December 31, 2011. 20 C.F.R. § 404.1520(a). The ALJ expressly found that plaintiff did not have a listing-level impairment or combination of impairments at that time. (R. 815.) Thus, the ALJ's citation to the wrong regulation, by itself, is not a basis for reversal.

Plaintiff also contends that the ALJ improperly relied on the testimony of medical expert Dr. Ronald Kendrick in making the finding that plaintiff did not meet or equal any listing. At the last hearing, on May 30, 2018, Dr. Kendrick testified that "the severity of [plaintiff's] symptoms would [not] qualify for getting or equaling . . . a listing . . . during that time period [*i.e.*, December 11, 2008 through the DLI]," specifically listing 1.04(A). (R. 891, 902-03.) Plaintiff contends, without citation to authority, that Dr. Kendrick's testimony is unreliable because "he did not explain to the ALJ why the elements of the listing [were not met or equaled] before he gave his opinion that the plaintiff would not qualify for a listing." (Pl.'s Br., ECF 20 at 8.) However, the law places on the claimant, not the medical expert, the burden of proving that a listing is equaled or met. *Maggard v. Apfel*, 167 F.3d 376, 380 (7th Cir. 1999). Plaintiff had the opportunity to

question Dr. Kendrick about the elements of each listing. His failure to do so does not make the ALJ's finding erroneous.[1]

Plaintiff also attacks the RFC, which he says is faulty because the ALJ "failed to undertake a functional analysis in accordance with SSR 96-Sp [sic]." (Pl.'s Br., ECF 20 at 13); *see* SSR 96-8P, 1996 WL 374184, at *1 ("The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before "express[ing] [it] in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy."). As the government notes, however, the Seventh Circuit has held that "a decision lacking a seven-part function-by-function written account of the claimant's exertional capacity does not . . . require remand," as long as "the ALJ applied the right standards and produced a decision supported by substantial evidence." *Jeske v. Saul*, 955 F.3d 583, 596 (7th Cir. 2020). The ALJ's extensive discussion about the RFC shows that she did. (*See* R. 816-26.)

Plaintiff further says the ALJ formulated the RFC without regard to the findings of a February 5, 2009 functional capacity evaluation ("FCE"). (Pl.'s Br., ECF 20 at 8; R. 754-60.) But the doctor who performed the FCE concluded that plaintiff could "occasionally lift[] 10-15 lbs." and "frequent[ly] lift[] . . . less than 10 lbs." (R. 754), limitations that are encompassed in the RFC for sedentary work. *See* 20 C.F.R. § 404.1567(a) ("Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.).

---

[1] Moreover, even if Dr. Kendrick's testimony were unreliable, it was not the only evidence on which the ALJ relied in making her determination. Rather, the ALJ also relied on "the opinions of the State Agency Medical consultants and the impartial medical experts to date in this case," who had testified at prior hearings that plaintiff's impairments did not meet or equal listing 1.02 or 1.04 in the relevant period. (R. 815; *see* R. 102, 977-78.)

In plaintiff's view, the RFC also ignores the findings of Dr. Middleton, who performed a consultative exam ("CE") of plaintiff in March 2011. Dr. Middleton concluded that plaintiff was "limited with frequent and repetitive overhead reaching, pulling, pushing, heavy lifting, ambulating, twisting and bending." (R. 707.) Though the RFC does not repeat these findings verbatim, it captures the limitations Dr. Middleton found. (*Compare id.*, *with* R. 816-17.)

According to plaintiff, the RFC also fails adequately to account for documented limitations of his left shoulder, which the ALJ discounted as having arisen post-DLI. (R. 823.) Plaintiff says, and the record shows, that he also complained of left shoulder pain in February 2007 and July 2011. (Pl.'s Br., ECF 20 at 12; *see* R. 479, 717.) The 2007 complaint, however, pre-dates the 2009 FCE and 2011 CE, the results of which, as noted above, are accounted for in the RFC. That leaves a single pre-DLI complaint of neck-related left shoulder pain for which plaintiff's doctor did not recommend any postural limitations. (*See* R. 717.) That single pre-DLI complaint does not impugn the ALJ's conclusion, based on substantial evidence, that plaintiff's left shoulder impairment began after he fell in May 2012, and thus need not be further accommodated in the RFC.

Next, plaintiff contends that the RFC fails to account for his headaches, his obesity, and the side effects of his medications. (Pl.'s Br., ECF 20 at 12, 15, 18.) Plaintiff does not, however, point to any evidence that suggests how those issues limit his ability to work, and the Court is not obligated to scour the record to look for it. *Joe R. v. Berryhill*, 363 F. Supp. 3d 876, 886 (N.D. Ill. 2019) ("'It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability.'") (quoting *Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)). In short, the RFC is supported by substantial evidence.[2]

---

[2] Because the RFC is not faulty, neither were the questions based on it that were posed to the vocational expert.

Plaintiff also challenges the ALJ's subjective symptom evaluation because the ALJ used boilerplate language condemned by the Seventh Circuit. (*See* R. 821 ("[T]he undersigned finds that, while [plaintiff's] impairments and associated residuals could reasonably be expected to cause some of the alleged symptoms, the statements made concerning the intensity, persistence and limiting effects of those symptoms are not entirely consistent with the medical . . . and other evidence in the record . . . ."); *see also Parker v. Astrue*, 597 F.3d 920, 921-22 (7th Cir. 2010) (characterizing this language as "meaningless boilerplate"). The Seventh Circuit has also held, however, that "the simple fact that an ALJ used boilerplate language does not automatically undermine or discredit [her] ultimate conclusion if [s]he otherwise points to information that justifies h[er] credibility determination." *Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013). Such is the case here. The ALJ said plaintiff's symptom allegations were belied by: (1) "[the] conservative [medical] management of [his alleged] impairments" and plaintiff's refusal to engage in more aggressive treatment; (2) plaintiff's use of over-the-counter pain medication and his refusal to take prescription medication; (3) plaintiff's noncompliance with recommended treatments or therapies; (4) the long periods of time in which plaintiff sought no treatment at all;[3] and (5) the inconsistencies between plaintiff's statements and those of his wife regarding his daily life activities. (R. 821-26.)[4] Thus, the ALJ's use of the boilerplate language, while not laudable, is not cause for a remand.

---

[3] The ALJ considered loss of insurance as an explanation for plaintiff's lapses in treatment but was not persuaded by it because "there is no indication that [plaintiff] pursued any low-income health options." (R. 819); *see* SSR 16-3p, 1996 WL 1119029, at *8 ("We will not find an individual's symptoms inconsistent with the evidence . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints . . . . When we consider the individual's treatment history, we may consider [whether] . . . [the claimant] may not be able to afford treatment and may not have access to free or low-cost medical services.").

[4] Though the ALJ did not consider plaintiff's work history in her symptom analysis, that omission alone does not render the analysis unsupported.

**Conclusion**

For the reasons stated above, the Court affirms the ALJ's decision, grants the Commissioner's motion for summary judgment [24], denies plaintiff's motion for summary judgment [17], and terminates this case.

**SO ORDERED.**                                  **ENTERED:  October 6, 2020**

**M. David Weisman**
**United States Magistrate Judge**